IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRISSY ROMAN<br>624 North Centre Street<br>Pottsville, PA 17901 | :<br>:<br>: CIVIL ACTION<br>: |
| Plaintiff, | : No.:<br>: |
| v. | :<br>: |
| WALMART ASSOCIATES, INC.<br>702 SW 8th Street<br>Bentonville, AZ 72716<br>  and<br>WAL-MART STORES EAST, INC. d/b/a<br>WAL-MART STORES EAST, LP<br>500 Terry Rich Blvd.<br>St. Clair, PA 17970 | :<br>: **JURY TRIAL DEMANDED**<br>:<br>:<br>:<br>:<br>:<br>: |
| Defendants. | :<br>: |

**FIRST AMENDED CIVIL ACTION COMPLAINT**

Crissy Roman (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by Wal-Mart Associates, Inc. and Wal-Mart Stores East, Inc. d/b/a Wal-Mart Stores East, LP (hereinafter collectively referred to as "Defendants") of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq*.), the Family and Medical Leave Act ("FMLA"- 29 USC § 2601), the Pennsylvania Human Relations Act ("PHRA").[1]  As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes.  She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC.  Plaintiff must however file her lawsuit in advance

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3. This Court may properly assert personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1392(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Middle District of Pennsylvania.

5. Plaintiff is proceeding herein after properly exhausting all administrative remedies with respect to her ADA claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety ("90") days of receiving a notice of dismissal and/or right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address set forth in the caption.

---

of same because of the date of issuance of her federal right-to-sue-letter under the ADA. Plaintiff's PHRA claims however will mirror identically her federal claims under the ADA.

2

8. Defendant Wal-Mart Associates, Inc., upon information and belief, is an American multinational retailing corporation with headquarters at the address set forth in the above caption. Wal-Mart Associates, Inc. is listed as Plaintiff's employer on her W-2 forms at the same address.

9. Wal-Mart Stores East, Inc. d/b/a Wal-Mart Stores East, LP, upon information and belief, is an American multinational retailing corporation with retail stores in several states, including the location at which Plaintiff worked in St. Clair, Pennsylvania (as identified in the above caption).

10. The business names set forth above were used interchangeably on Plaintiff's employment documents and internal documents within Defendants.

11. Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

12. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendants.

## FACTUAL BACKGROUND

13. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

14. Plaintiff was employed with Defendants off and on in total for over 5 years.

15. Plaintiff's most recent term of employment with Defendants began in or about December of 2019 until her unlawful termination (discussed further *infra*) on January 20, 2021.

16. During the last approximate 13 months of her employment with Defendants, Plaintiff was working as a Sales Associate (in Electronics) from Defendants' retail store located at 500 Terry Rich Blvd, Saint Clair, Pennsylvania.

17. Some relevant leads, supervisors and management during Plaintiff's during her employment with Defendants, included but were not limited to: (1) Human Resources ("HR") Coordinate, Elvin Whetstone (hereinafter "Whetstone"); (2) Team Lead, Cab Boyer (hereinafter "Boyer"); (3) Supervisor, Amanda Schwartz (hereinafter "Schwartz"); (4) Asset Protection manager, Matthew Klinger (hereinafter "Klinger"); and (5) Store Manager, Daniel Nates (hereinafter "Nates"). Plaintiff was primarily supervised by Senior Practice Manager, Candice Cooper (hereinafter "Cooper").

18. Throughout her tenure with Defendants, Plaintiff was a hard-working employee who performed her job well.

19. Plaintiff has and continues to suffer from long-term disabilities, including but not limited to depression and anxiety (and related conditions).

20. As a result of her aforesaid disabilities, Plaintiff experiences fearfulness, fatigue, and sleeplessness, which (at times) limits her ability to perform some daily life activities, including but not limited to focusing, sleeping and working (among other daily life activities).

21. Despite her aforesaid health conditions and limitations, Plaintiff was still able to perform the duties of her job well with Defendants; however, Plaintiff did require reasonable accommodations while employed with Defendants (discussed further *infra*).

22. At all relevant times herein, Defendants' management was aware of Plaintiff's aforesaid serious health conditions, as she had notified them of same and utilized intermittent time off for doctors' visits and to care for and treat for her disabilities.

23.     Leading up to her abrupt termination, Plaintiff was out of work **for approximately one day** due to hospitalization for her mental health conditions (a reasonable accommodation under the ADA).

24.     Defendants' management was fully aware of Plaintiff's hospitalization for her aforesaid serious health conditions, because Plaintiff's sister reached out to HR on or about January 18, 2021, to inform Defendant that Plaintiff would not be in that day as she had been hospitalized since January 17, 2021.

25.     Plaintiff remained hospitalized for her aforesaid health conditions until the early morning hours of January 19, 2021 (Plaintiff's scheduled day off for that week).

26.     The same day that she was released from the hospital (January 19, 2021), Plaintiff came to work, despite it being her scheduled day off, to provide HR with documentation of her hospitalization which demonstrated her need for intermittent leave on January 18, 2021.

27.     Notwithstanding demonstrating her need for time of for her aforesaid disabilities (*see* Paragraph 26, *supra*), Defendants' management exhibited extreme animus toward Plaintiff's health conditions and frustration with her requested accommodation.

28.     For example, but not intended to be an exhaustive sample, immediately upon Plaintiff's return to work on or about January 20, 2021, Defendants' management hostilely and erroneously advised Plaintiff, "you would have been smart stay out an extra day so that it would have qualified as a leave of absence" – despite that Plaintiff's brief one day leave for her mental health conditions constituted ADA and FMLA-qualifying absenteeism.

29.     Subsequently, *less than one hour* after returning to work on or about January 20, 2021, from her very brief one day medical leave (*see* Paragraph 24, *supra*), Plaintiff was abruptly terminated for "attendance" point accumulation.

30. Plaintiff avers that at no point leading up to her abrupt termination, did Defendants' management inform Plaintiff of any "attendance" point accumulation or that she was in danger of termination for same.

31. Defendants could easily have accommodated Plaintiff's disability related absences by not counting them against her, in violation of the ADA and FMLA at the time of her termination.

32. Moreover, because of Plaintiff's prior years of work history, she was eligible for leave pursuant to the FMLA, by the late fall of 2020 (as Plaintiff had worked 1,250 hours by then and already had a full year of employment from prior work history).[2] Nonetheless, Defendants failed to inform Plaintiff or her eligibility under the FMLA[3] for her brief hospitalization and/or one day medical leave on or about January 18, 2021, or designate such leave as FMLA-qualifying absenteeism.

33. As a result, Defendants failed to follow proper notice, designation, and informational regulations of the FMLA.

34. Prior to abruptly terminating Plaintiff's employment, Defendants failed to (1) properly inform Plaintiff of her individualized FMLA rights, which constitutes a failure to follow proper notice, designation, and information regulations of the FMLA; (2) engage in the interactive process as required under the ADA; (3) accommodate Plaintiff under the ADA; or (3) hold Plaintiff's position open during her very brief medical leave.

35. Plaintiff believes and therefore avers that she was terminated from her employment with Defendants because of: (1) her known and/or perceived health problems; (2) her record of

---

[2] *See* 29 C.F.R. § 825.110 ("The 12 months an employee must have been employed by the employer need not be consecutive months," provided the prior break in service has not exceeded seven years.).

[3] *See* 29 C.F.R. § 825.300 (b)(1) ("When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, ***the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days***.") (Emphasis added).

impairment; (3) her requested accommodations; and/or (4) Defendants' failure to properly accommodate her.

## COUNT I
### Violations of the Americans with Disabilities Act, as amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;
[3] Hostile Work Environment; and [4] Failure to Accommodate)
-Against Both Defendants-

36. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37. Plaintiff has and continues to suffer from long-term disabilities, including but not limited to depression and anxiety (and other complications).

38. As a result of her aforesaid disabilities, Plaintiff experiences fearfulness, fatigue, and sleeplessness, which (at times) limits her ability to perform some daily life activities, including but not limited to focusing, sleeping, and working (among other daily life activities).

39. Despite her aforesaid health conditions and limitations, Plaintiff was still able to perform the duties of her job well with Defendants; however, Plaintiff did require reasonable accommodations while employed with Defendants (*i.e.,* intermittent medical leave).

40. Plaintiff kept Defendants' management apprised of her aforesaid disabilities and requests for reasonable accommodations in the form of intermittent leave.

41. Plaintiff was subjected to hostility and animosity due to her health and/or requests for accommodations through rude, demeaning and/or discriminatory treatment towards her, and pretextual discipline.

42. Plaintiff was abruptly terminated from her employment with Defendants, on or about January 20, 2021, ***just two days*** following her requests for/utilization of reasonable medical accommodations (*i.e.,* brief one day medical leave).

43. Prior to abruptly terminating Plaintiff's employment, Defendants failed to (1) engage in the interactive process as required under the ADA; (2) accommodate Plaintiff under the ADA; or (3) hold Plaintiff's position open during her brief medical leave.

44. Therefore, Plaintiff believes and avers that she was terminated from Defendants because of: (1) her known and/or perceived health conditions; (2) her record of impairment; (3) her requested accommodations; and/or (4) Defendant's failure to properly accommodate her.

45. These actions as aforesaid constitute violations of the ADA, as amended.

## COUNT II
## Violations of the Family and Medical Leave Act ("FMLA")
([1] Retaliation & [2] Interference)
-Against Both Defendants-

46. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

48. Plaintiff requested leave from Defendants, her employers, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

49. Plaintiff had at least 1,250 hours of service with Defendants during her last full year of employment.

50. Defendants are engaged in an industry affecting commerce and employ fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

51. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

52. Plaintiff requested/utilized FMLA-qualifying leave during the last full year of her employment with Defendants.

53. Defendants committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising her FMLA rights and/or for taking FMLA-qualifying leave; (2) considering Plaintiff's FMLA leave needs in making the decision to terminate her; (3) failing to inform Plaintiff of her individualized FMLA rights, following her January 2021 hospitalization, which constitutes a failure to follow proper notice, designation, and information regulations of the FMLA; (4) terminating Plaintiff to intimidate her and/or prevent her from taking FMLA-qualifying leave in the future; (5) making negative comments and/or taking actions towards her that would dissuade a reasonable person from exercising her rights under the FMLA; (6) failing to designate Plaintiff's requests for intermittent time off for health conditions on January 18, 2021 as FMLA-qualifying or FMLA protected leave; and (7) by counting FMLA-qualifying absences against Plaintiff, resulting in her termination.

54. These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish

Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

      D.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

      E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

      F.     Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated:  March 22, 2022